# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAUREEN MARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14-cv-5844 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| PORTFOLIO RECOVERY ASSOCIATES, LLC ) | |
| AND FREEDMAN, ANSELMO & LINDBERG, ) | |
| LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Before the Court is Defendant Portfolio Recovery Associate's (PRA's) motion to compel arbitration and stay the proceedings pending the completion of arbitration [39]. For the reasons stated below, the Court grants PRA's motion [39], compelling arbitration and staying the litigation in the interim. The parties are instructed to file a joint status report within 7 days after the arbitrator issues a final decision, after which the Court will set this case for a further status hearing. The Court also strikes Plaintiff's motion for class certification [32], as that motion is more properly addressed in arbitration.

## I.    Background[1]

Plaintiff opened a credit card account with US Bank in 2011 and defaulted on her credit card debt. Defendant PRA purchased the debt and attempted to collect it, retaining Defendant Freedman to assist it in the collection process. Freedman sent Plaintiff an initial collection

---

[1] The Court assumes as true all well-pleaded allegations set forth in the complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

1

letter, stating that "[b]ecause of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater." [1 at 4]. Plaintiff alleges that Defendants were not authorized to add late charges or any other charges to her account. She alleges that the letter therefore made false or misleading representations in violation of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10) and that Defendants used unfair or unconscionable means to collect Plaintiff's debt in violation of 15 U.S.C. § 1692f.

PRA moves to compel arbitration pursuant to Plaintiff's Cardmember Agreement with US Bank. The Cardmember Agreement states in relevant part:

> 45. Arbitration Provision:
>
> (a) You agree that either you or we can choose to have binding arbitration resolve any claim, dispute or controversy between you and us that arises from or relates to this Agreement or the Account and credit issued thereunder (individually and collectively, a "Claim"). * * * If arbitration is chosen by any party, the following will apply:
>
>> (1) NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT OR TO HAVE A JURY TRIAL ON A CLAIM, OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY, EXCEPT AS PROVIDED FOR IN THE APPLICABLE ARBITRATION RULES.
>>
>> (2) Arbitration will only decide our or your Claim, and you may not consolidate or join the claims of other persons who may have similar claims. YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS, OR AS A PRIVATE ATTORNEY GENERAL, PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. * * *
>
> (c) This Arbitration Provision shall survive repayment of your extension of credit and termination of your Account. This Arbitration Provision shall be governed by federal law, including the Federal Arbitration Act[.]

[50 at 17-18]. The Cardmember Agreement also includes the following relevant language:

> 35. Assignment of Your Account to Another Creditor: We may assign, sell or transfer your Account and amounts owed by you to another creditor at any time. If we do, this Agreement will still be in effect unless and until amended, and any references made in this Agreement to "we", "us", or "our" will refer to the

creditor to which we assigned, sold, or transferred your Account or amounts owed under your Account.

[50 at 17].

PRA purchased Plaintiff's account from US Bank, pursuant to an Asset Sale Agreement ("ASA") and Bill of Sale and Assignment of Assets. In the ASA, US Bank represented that each of the purchased accounts was "interest bearing and not subject to mandatory arbitration." [58-1 at 64].[2] The ASA also provides that the agreement "shall be governed by and construed in accordance with the substantive laws of the State of Minnesota." [*Id.* at 69]. The Bill of Sale and Assignment of Assets stated that US Bank assigns "all of [its] right, title and interest in and to" the accounts purchased by PRA. [*Id.* at 28].

## II.     Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, was enacted against "centuries of judicial hostility to arbitration agreements * * * to place arbitration agreements upon the same footing as other contracts." *Volkswagen Of Am., Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007) (citations and internal quotation marks omitted). Reflecting a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983), the FAA provides that binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, the standard for compelling arbitration is low. Arbitration may be compelled if only three elements are shown: "[1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9

---

[2] The copy of the ASA provided to the Court includes a schedule naming the particular accounts purchased. The Court is unable to confirm that Plaintiff's account is on that list because the schedule is fully redacted. Because Plaintiff does not contest PRA's assertion that her account is on that schedule, however, the Court assumes that Plaintiff's account was included in the assignment.

3

U.S.C. § 4). A party moving to compel arbitration may move a court to stay litigation pending the completion of arbitration. 9 U.S.C. § 3.

## III. Analysis

PRA moves to compel arbitration and stay the litigation pending the completion of arbitration. It argues that all three requirements for compelling arbitration are satisfied because (1) the Cardmember Agreement includes a written agreement to arbitrate, (2) Plaintiff's FDCPA claim falls within the scope of that agreement, and (3) Plaintiff refuses to arbitrate.

Plaintiff only disputes the first requirement. Specifically, she does not contest that the Cardmember Agreement requires her to arbitrate rather than litigate her disputes. Rather, she argues that PRA has no right to enforce her duty to arbitrate. More specifically, she argues that when US Bank assigned her account to PRA, it excluded the arbitration provision from its assignment because it represented that "[e]ach of the Accounts is interest bearing and not subject to mandatory arbitration." [58-1 at 64]. Plaintiff argues that because US Bank never assigned its rights under the arbitration provision to PRA, PRA has no right to enforce the provision against Plaintiff.

In response, PRA argues that US Bank did assign its rights under the arbitration agreement because in the Bill of Sale and Assignment of Assets, US Bank conveyed "all of [its] right, title and interest in and to" the purchased assets. [58-1 at 28]. PRA argues that US Bank's representation that none of the accounts were subject to "mandatory arbitration" is consistent with that transfer. According to PRA, "mandatory arbitration" is a term of art referring to (1) statutorily required arbitration, (2) court-ordered arbitration, and (3) arbitration provisions with mandatory language, such as "shall be determined by arbitration." [60 at 5]. PRA argues that the arbitration provision in the Cardmember Agreement is none of these; instead, it is voluntary

4

because it provides, "You agree that either you or we *can* choose to have binding arbitration," [60 at 5] (emphasis added). PRA argues that the representation is therefore consistent with an assignment of US Bank's rights under the arbitration provision and that PRA therefore has a right to enforce that provision.

Because the parties agree that the Court's decision turns on whether the arbitration agreement was included in the assignment, the Court looks to the ASA and the Bill of Sale and Assignment of Assets, interpreting both under Minnesota law pursuant to the choice of law provision in the ASA. [58-1 at 69]. In Minnesota, "the primary goal of contract interpretation is to determine and enforce the intent of the parties." *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). "Where there is a written instrument, the intent of the parties is determined from the plain language of the instrument itself." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). "Where the parties express their intent in unambiguous words, those words are to be given their plain and ordinary meaning." *Motorsports Racing Plus*, 666 N.W.2d at 323. "A contract is ambiguous if its language is reasonably susceptible to more than one interpretation." *Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). Minnesota courts "read contract terms in the context of the entire contract and will not construe the terms so as to lead to a harsh and absurd result. Additionally, [they] interpret a contract in such a way as to give meaning to all of its provisions." *Id.*

The Bill of Sale and Assignment of Assets unambiguously assigns "all of [its] right, title and interest in and to" the accounts purchased by PRA. [58-1 at 28]. The plain and ordinary meaning of "all of [its] right, title and interest in and to" provides for an assignment of all of US Bank's rights under the Cardmember Agreement, including the arbitration provision. The

"mandatory arbitration" language is not inconsistent with this interpretation. In representing that that none of the transferred accounts were subject to "mandatory arbitration," US Bank represented the nature of the rights it was transferring; it did not covenant to include or exclude certain rights in the Cardmember Agreements from the assignment.[3] Whether US Bank misrepresented the nature of the assets it assigned is an issue not before the Court, so, although the parties have spent considerable time arguing the meaning of "mandatory arbitration," the Court need not decide its meaning. The only issue here is whether US Bank's assignment included the arbitration provision. Based on the unambiguous language of the Bill of Sale and Assignment of Assets transferring "*all* of [US Bank's] right, title and interest in and to" the accounts, the Court finds that PRA does have a right to enforce the arbitration provision in the Cardmember Agreement. [58-1 at 28] (emphasis added). Accordingly, the Court grants PRA's motion to compel arbitration, staying this litigation pending the outcome of arbitration.[4]

---

[3] Although Section 8.1 of the ASA states that "Seller represents, warrants and covenants to Buyer as follows: * * * * (e) Each of the Accounts is interest bearing and not subject to mandatory arbitration," it is clear that subsection (e) is a representation, not a covenant; it presents a past or existing fact rather than promising to do or not do something in the future. [58-1 at 63-64]; see BLACK'S LAW DICTIONARY (10th ed. 2014) (explaining that a covenant is a "formal agreement or promise * * * to do or not do a particular act" whereas a representation is a "presentation of fact — either by words or by conduct — made to induce someone to act"); *Lance J. Marchiafava, Inc. v. Haft*, 777 F.2d 942, 946 (4th Cir. 1985) (same). The language "covenants" in Section 8.1 applies to another subsection on unenforceable accounts, which provides that "Seller *shall refund* to Buyer on the terms set forth in this Section, the amount paid for each Unenforceable Account[.]" [58-1 at 63] (emphasis added).

[4] PRA also may have a right to enforce the arbitration agreement under a third-party beneficiary theory. "A nonsignatory third-party beneficiary to a contract may, in some circumstances, enforce an arbitration clause, 'if the contracting parties intended the third party to directly benefit from the contract.'" *St. Paul Fire & Marine Ins. Co. v. API, Inc.*, 2004 WL 2161181, at *4 (Minn. Ct. App. Sept. 28, 2004) (quoting 1 Larry E. Edmondson, *Domke on Commercial Arbitration* § 13.9 (2003) (footnote omitted)) (citing *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 356 (Minn. 2003)). Here, the arbitration provision in the Cardmember Agreement provides, "NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT * * * * Arbitration will only decide our or your Claim[.]" [50 at 17-18]. The assignment provision further provides that in the event of assignment, "any references made in this Agreement to 'we', 'us', or 'our' will refer to the creditor to which we assigned, sold, or transferred your Account or amounts owed under your Account." [50 at 17]. Accordingly, the Cardmember Agreement may well identify an assignee-creditor as a third-party beneficiary of the arbitration provision.

## IV. Conclusion

For the reasons stated above, the Court grants PRA's motion [39], compelling arbitration and staying the litigation in the interim. The Court also strikes without prejudice Plaintiff's motion for class certification [32], as that motion is more properly addressed in arbitration. The parties are instructed to file a joint status report within 7 days after the arbitrator issues a final decision, after which time the Court will set this case for a further status hearing.


Dated: April 27, 2015 _____
Robert M. Dow, Jr.
United States District Judge